IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

INTERNATIONAL UNION
OF OPERATING ENGINEERS,
LOCAL 953,

      Plaintiff,

vs.                                                        Civ. No. 14-00915 MCA/WPL

SAN JUAN COAL COMPANY,

      Defendant.

## ORDER

This is a proceeding on a Complaint to Compel Arbitration brought by Plaintiff, a labor union, against Defendant, an employer. Jurisdiction is predicated on Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a). The case is before the Court upon Plaintiff Union's *Motion for Summary Judgment* [Doc. 15]. The Court has considered the parties' written submissions, the record in this case and the applicable law, and is otherwise fully advised.

**Summary Judgment Standards**

Fed. R. Civ. P. 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that

1

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As our Court of Appeals has succinctly stated:

> A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented.

*Adamson v. Multi Cmty. Diversified Serv., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or to make credibility determinations." *Sanders v. Southwestern Bell Tel., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

**Background**

Plaintiff, International Union of Operating Engineers Local 953, is the exclusive collective bargaining representative with respect to wages, hours, and other conditions of employment for workers employed by Defendant, San Juan Coal Company, at its coal mine located near Farmington New Mexico. The Union and SJCC are parties to a collective bargaining agreement, "the Underground CBA," in effect from May 1, 2011 through April 20, 2017. The Underground CBA includes a four step grievance procedure. [Doc. 16-2 at 18] In 2012, a dispute arose between the parties over payment of certain shift premiums. The Union pursued a grievance, number SJU-M-016, through the first three steps of the grievance procedure. Thereafter, the Union notified SJCC that it intended to take the grievance to arbitration, the fourth and final step of the grievance

2

procedure. The Union and SJCC also were involved in a dispute over shift changes. On March 30, 2012, the Union filed an unfair labor practices charge with the NLRB. On July 31, 2012, the NLRB issued a complaint against SJCC in Case No. 28-CA-077868. In the meantime, the Union and SJCC agreed to hold the grievance in abeyance. With the approval of the NLRB, the Union and SJCC settled the case before the NRLB, documenting their settlement in a December 13, 2012 Settlement Agreement [Doc. 15-4 at 6-7]. In addition to resolving the unfair labor practices charge, the Settlement Agreement addressed the grievance, providing that:

> 5. The parties agree to arbitrate grievance number SJU-M-016 regarding the new and fixed shift premium currently held in abeyance and further agree to waive their respective rights to seek an order vacating any resulting Award in state or federal court. Parties shall arbitrate the issue presented in the grievance on its merits and hereby waive timeliness and other procedural objections.

The Settlement Agreement contained its own arbitration clause:

> 7. The parties agree that any and all disputes regarding the interpretation and application of this Agreement shall be resolved via the parties' grievance and arbitration procedures set forth in the Underground CBA.

In August, 2013, the parties selected arbitrator James M. O'Reilly to hear and decide grievance number SJU-M-016. During 2014, a dispute arose between the Union and SJCC as to the scope of the issues to be decided by Arbitrator O'Reilly pursuant to Paragraph 5 of the Settlement Agreement. SJCC took the position that the Union was attempting to expand the scope of grievance number SJU-M-016. SJCC has refused to arbitrate grievance number SJU-M-016 unless it is assured of judicial review of Arbitrator O'Reilly's decision. To this date, the arbitration has not occurred.

3

**Primary Jurisdiction**

SJCC argues as an initial matter that the Court lacks jurisdiction to enforce the Settlement Agreement because the NLRB has primary jurisdiction over this labor dispute. SJCC principally relies on *Amalgamated Clothing & Textile Workers v. Standard-Coosa-Thatcher Carpet Yarn Div.*, 516 F. Supp. 1078 (N.D. Ala. 1981). *Amalgamated* is readily distinguishable in that the settlement agreement which the plaintiff-union sued to enforce had been "validly set aside" and was "no longer in existence," resulting in the reinstatement of the unfair labor practices charge. *Id.* at 1081. Here, the Union sues upon a concededly valid Settlement Agreement, which both resolved the unfair labor practices charges in NLRB Case No. 28-CA-077868 (the matter within the NLRB's primary jurisdiction) and expressly reserved for arbitration the contract dispute subsumed by grievance number SJU-M-016. The Court is presented with a bona fide contractual dispute over which it has jurisdiction pursuant to Section 301(a). *See Serv. Employees Int'l Union v. St. Vincent Med. Ctr.*, 344 F.3d 977, 983 (9th Cir. 2003) (noting jurisdictional distinction between disputes that are "primarily representational or primarily contractual").

**Interpretation and Application of Paragraphs 5 and 7**

Apart from the merits of grievance number SJU-M-016, the Court discerns the principal dispute between the parties to be over the *scope* of grievance number SJU-M-016, as well as by whom the scope is to be determined. According to SJCC, the Union has indicated its intention to expand the scope of arbitration pursuant to Paragraph 5 to include issues that were not contemplated by the parties when they entered into the

Settlement Agreement. [Doc. 16-1] The Union takes the position that the Arbitrator O'Reilly can decide the scope of issues the parties agreed to arbitrate prior to reaching the merits of those issues in the course of the arbitration contemplated by Paragraph 5. SJCC's concern is that under the Union's proposed approach, an erroneous determination of the scope of grievance number SJU-M-016 by Arbitrator O'Reilly would be immune from post-arbitration judicial review, given the provision in Paragraph 5 by which the parties "waive their respective rights to seek an order vacating any resulting Award in state or federal court." SJCC avers that it has "no objection to arbitrating the grievance, so long as it retains its right to file a court action to vacate the arbitrator's eventual award, should the arbitrator exceed his jurisdiction and issue an unlawful decision." [Doc. 16 at 1]

The Court views the parties' dispute over the scope of the issues submitted to arbitration by Paragraph 5 as a "gateway dispute." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Gateway disputes include disputes as to whether a concededly binding arbitration clause applies to a particular controversy. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Gateway disputes raise questions of arbitrability that presumptively are for a court to decide absent contract language clearly and unmistakably assigning a gateway issue to the arbitrator. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995).

In resolving the parties' dispute, the Court looks to the federal common law of labor contract disputes, drawing guidance from general common-law contract principles to

the extent they are consistent with federal labor policy. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 405 (7th Cir. 2002).

Courts will enforce a contract according to the parties' *subjective* understanding where evidence shows that *both* parties shared the same subjective understanding of their agreement. *See Farmington Police Officers Ass'n*, 2006-NMCA-077, ¶ 18 (discussing Restatement (Second) Contracts § 201(1) (1981)). Here, the record contains evidence of SJCC's subjective understanding of Paragraphs 5 and 7 [Docs. 16-1; 24-1]; but this evidence would not permit a reasonable factfinder to conclude that the Union shared SJCC's subjective understanding.

Alternatively, applying Restatement § 201(2)(a), courts will enforce a contract according to one party's subjective understanding if the first party did not know of any different meaning attached by the other party and the other party knew of the meaning attached by the first party. *Farmington Police Officers Ass'n*, 2006-NMCA-077, ¶18 (discussing Restatement § 201)(2)(a)). Here, as previously noted, the record contains evidence of SJCC's subjective understanding; but there is an absence of evidence that would allow a reasonable factfinder to conclude that the Union actually was aware of SJCC's subjective understanding of Paragraphs 5 and 7 at the time the parties executed the Settlement Agreement.

When these first two methods of interpreting a contract provision fail, as they do here, courts turn to the objective theory of contractual assent. *Farmington Police Officers Ass'n*, 2006-NMCA-077, ¶ 19 (discussing Restatement § 201(2)(b)). To prevail under the objective approach of Restatement § 201(2)(b), the Union must establish that (1) it had no

reason to know that SJCC interpreted the Settlement Agreement to assign the scope of arbitration pursuant to Paragraph 5 to a court and (2) SJCC had reason to know that the Union understood the Settlement Agreement to assign the scope of arbitration to the arbitrator.

Because this is a dispute over a gateway issue the Court must afford SJCC the benefit of the presumption noted above that parties to an arbitration agreement generally do not intend to assign gateway questions to arbitration. *First Options*, 514 U.S. at 944-45. This background principle would have informed the parties' understanding of Paragraph 7 [Doc. 24-1, ¶ 8]; but so would have the rule that clear and unmistakable language can override the presumption. The parties' dispute over the scope of the issues subsumed by grievance number SJU-M-016 manifestly fits within the plain meaning of "disputes regarding the interpretation and application of this Agreement." The question is whether the language of Paragraph 7, given its plain meaning, is sufficient to rebut the presumption[1] against arbitration of gateway issues and to eliminate genuine issues of material fact as to what each party had reason to know about the other's understanding.

The Court concludes that the language of Paragraph 7 of the Settlement Agreement satisfies the Union's burden. This is not a case in which the arbitrator is being asked to decide the issue of whether an agreement to arbitrate exists in the first place: here, SJCC has admitted that it agreed to arbitrate the grievance described in Paragraph 5 of the Settlement Agreement [Doc. 16 at 4, ¶ 10]. Nor is this a case like *Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998), where the

---

[1] Federal Rule of Evidence 301 governs the effect of presumptions in civil cases.

7

parties' settlement agreement was "noteworthy for its lack of an arbitration clause." Rather, this case involves a dispute over who decides what issues are subsumed by a concededly valid agreement to arbitrate the merits of a specific grievance, coupled with a further agreement expressly committing to arbitration disputes over the "interpretation and application" of the agreement to arbitrate the grievance. As the First Circuit Court of Appeals observed in the course of interpreting a similar arbitration provision:

> The parties to this grievance negotiated a broad arbitration clause memorializing their intention to arbitrate all questions of contract construction. Whether categorized as an issue of substantive arbitrability or not, the instant dispute over the meaning of language in the [settlement agreement] is one that the parties clearly anticipated would be resolved by an arbitrator, not a court. In these circumstances, we must enforce the bargain the parties struck and allow the arbitrator to decide the issues they committed to her resolution.

*Unite Here Local 217 v. Sage Hospitality Resources*, 642 F.3d 255, 262 (1st Cir. 2011). Given the plain meaning of Paragraph 7, by which disputes regarding the interpretation and application of Paragraph 5 are clearly and unmistakably assigned to arbitration, no reasonable factfinder could conclude that SJCC's subjective understanding of the Settlement Agreement was objectively reasonable. Thus, this is not a case like *Farmington Police Officers Association*, where each party's interpretation was one to which the contract language was reasonably susceptible, and, therefore, the contract language could not of itself eliminate genuine issues of material fact as to what each party had reason to know about the other party's understanding. *Id.*, 2006-NMCA-077,

¶ 22. Here, SJCC's proffered interpretation reserving the scope of Paragraph 5's arbitration clause for judicial determination relies on a cramped, unnatural construction of Paragraph 7.

The Court has considered *Communication Workers of America v. Avaya, Inc.*, 693 F.3d 1295 (10th Cir. 2012), and finds it materially distinguishable from the present case. The present case requires the Court to give effect to *three* arbitration clauses: (1) the arbitration clause in the Underground CBA, (2) the arbitration clause in Paragraph 5 of the Settlement Agreement, and the arbitration clause in Paragraph 7 of the Settlement Agreement. If this case turned on a "catch-all" arbitration clause in a collective bargaining agreement as in *Avaya*, the Court might be inclined to agree that the general arbitration clause in the Underground CBA does not provide the clear and unmistakable language required to assign the scope of Paragraph 5 to arbitration. Here, however, the Settlement Agreement contains a concededly valid arbitration clause (Paragraph 5) by which the parties agree to arbitrate a specific grievance, and a second arbitration clause (Paragraph 7) by which the parties agree to submit to arbitration any question as to the interpretation and application of the first arbitration clause. In contrast to the union's position in *Avaya*, 693 F.3d at 1301 (noting that 'the district court was wrong to compel arbitration based on the nothing more than [the union's] 'belief'"), the Union's position in this case does not depend on the Union's mere "belief" that the scope of arbitration has been committed to arbitration; rather, the Union's position turns on the plain meaning of Paragraph 7's arbitration clause.

One final point: there is a significant consequence to assigning the scope of grievance number SJU-M-016 to arbitration pursuant to the Underground CBA. Because the Underground CBA does not contain a waiver-of-judicial-review clause, any arbitral determination of the scope of grievance number SJU-M-016 pursuant to Paragraph 7 (which expressly incorporates the arbitration procedure of the Underground CBA) will be subject to judicial review, albeit extremely narrow review. *Burlington N. & S.F. Ry. Co. v. Pub. Serv. Co. of Okla.*, 636 F.3d 562, 568-69 (10th Cir. 2010). The prospect of judicial review of Arbitrator O'Reilly's determination of the scope of the arbitration should obviate SJCC's concern that it "retain[] its right to file a court action to vacate the arbitrator's eventual award, should the arbitrator exceed his jurisdiction. . . ."

**WHEREFORE, IT HEREBY IS ORDERED** that Plaintiff's *Motion for Summary Judgment* [Doc. 15] is **granted**;

**IT FURTHER IS ORDERED** that the parties promptly submit to arbitration grievance number SJU-M-016, subject to judicial review of the arbitrator's determination of the scope of the issues subsumed by grievance number SJU-M-016.

So ordered this 31st day of December, 2015.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge